Jennifer L. Braster
Nevada Bar No. 9982
NAYLOR & BRASTER
1050 Indigo Drive, Suite 200
Las Vegas, NV 89145
(T) (702) 420-7000
(F) (702) 420-7001
jbraster@naylorandbrasterlaw.com

Cheryl L. O'Connor
Nevada Bar No. 14745
coconnor@jonesday.com
Brianne J. Kendall (admitted *pro hac vice*)
CA Bar No. 287669
bkendall@jonesday.com
JONES DAY
3161 Michelson Drive
Suite 800
Irvine, CA 92612.4408
(T) (949) 851-3939
(F) (949) 553-7539

*Attorneys for Defendant*
*Experian Information Solutions, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| CAROL MAINOR,<br><br>Plaintiff,<br><br>v.<br><br>EXPERIAN INFORMATION SOLUTIONS, INC.,<br><br>Defendant. | Case No. 2:16-cv-00183-RFB-PAL<br><br>**DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION FOR SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>**ORAL ARGUMENT REQUESTED**<br><br>Complaint filed: January 29, 2016<br>Supplemental Complaint filed: October 13, 2017 |

Defendant Experian Information Solutions, Inc. ("Experian"), by and through its counsel of record, hereby files this Motion for Summary Judgment ("Motion"). This Motion is based on the Memorandum of Points and Authorities in Support of the Motion, declarations and exhibits attached thereto, all of the pleadings and other papers on file in this action, and upon such further evidence or argument that the Court may consider.

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Despite Plaintiff Carol Mainor's ("Plaintiff") repeated efforts to transform this case into a putative class action, in reality, it is just a garden-variety dispute over whether Experian conducted a reasonable reinvestigation when Plaintiff disputed certain information on her consumer disclosure. Specifically, Plaintiff alleges that Experian violated Section 1681i of the Fair Credit Reporting Act ("FCRA") by reporting certain allegedly inaccurate information about an account that she claims was involved in her Chapter 13 bankruptcy, and by failing to conduct a reasonable reinvestigation when Plaintiff disputed that information with Experian. The undisputed facts, however, are insufficient to establish any—much less all—of the elements of her FCRA claim. Plaintiff cannot show that Experian's reporting was inaccurate; she cannot show that Experian's reinvestigation in response to her dispute was unreasonable; and she cannot show that Experian's allegedly deficient reinvestigation was willful, nor that it caused her any harm. Accordingly, Experian respectfully requests that the Court grant summary judgment in its favor.

## STATEMENT OF UNDISPUTED MATERIAL FACTS

### A.    Experian's Credit Reporting Practices

Experian generates consumer reports based on information that it receives from creditors, also called "data furnishers." (Declaration of Mary Methvin ("Methvin Decl.") ¶¶ 4–5; Ex. 1 at pp. 4–5.)[1] Experian organizes the information creditors provide into usable reports and makes those reports available to consumers and authorized third parties. (Methvin Decl. ¶ 6; Ex. 1 at pp. 4–5.)[2] Although consumer reporting agencies ("CRAs"), such as Experian, necessarily depend on the information data furnishers provide, Experian has instituted procedures for verifying the accuracy of information it reports. (Methvin Decl. ¶ 6; Ex. 1 at pp. 4–9.) In the event a consumer disputes

---

[1] All referenced Exhibits are attached to the concurrently filed declaration of Jennifer L. Braster.

[2] The term "credit report" refers to a "consumer report"—the document provided by CRAs to credit grantors, insurers, or employers for credit-related decisions. *See* 15 U.S.C. § 1681a(d)(1); (Methvin Decl. ¶ 8). When a consumer seeks access to his own credit information directly from a CRA, the resulting document is called a "consumer disclosure" or "credit file disclosure." (Methvin Decl. ¶ 8; Ex. 2 at 28:6–15.)

the accuracy of certain information, Experian also has procedures in place to reinvestigate the disputed information.  (Methvin Decl. ¶¶ 7, 9; Ex. 1 at 4–9; Ex. 2 at 27:18–28:5; 32:11–25.)  In performing these reinvestigations, Experian considers all relevant information the consumer provides.  (Methvin Decl. ¶ 9; Ex. 1 at pp. 6–7.)

In some cases, Experian is able to internally resolve some disputes based either on proof provided by the consumer or Experian's own internal policies.  (Methvin Decl. ¶ 10; Ex. 1 at p. 7; Ex. 2 at 38:16–39:4.)  In other cases, Experian contacts the relevant data furnisher, explains the consumer's dispute, forwards a copy of all documentation provided by the consumer, and requests a response concerning the accuracy of the disputed item.  (Methvin Decl. ¶ 10; Ex. 1 at 7–8; Ex. 2 at 69:12–70:2.)  This contact with data furnishers occurs through submission of an Automated Consumer Dispute Verification ("ACDV") form.  (Ex. 1 at pp. 7–8; Ex. 2 at 23:24–24:9.)  When the reinvestigation is complete, Experian mails to the consumer the dispute results which reflects any updates or changes made by Experian as a result of the consumer's dispute.  (Methvin Decl. ¶ 11; Ex. 1 at pp. 8–9; Ex. 2 at 20:2–8; 43:21–25.)

Because Experian merely reports the information provided by data furnishers, and is not a consumer creditor itself, Experian is not a party to consumer bankruptcy proceedings.  Consequently, it obtains information about consumer bankruptcies from three other sources.  First, Experian relies on individual data furnishers to obtain account-level information about accounts included in bankruptcy.  (Methvin Decl. ¶ 12; Ex. 3 at 195:2–196:6.)  Data furnishers can (and should) report information regarding the consumer's account, including whether that account was included in a consumer's bankruptcy and whether the debt was discharged.  (Methvin Decl. ¶ 12; Ex. 16 at 106:23–109:1.)  Second, individual consumers may provide account-level information to Experian.  (Methvin Decl. ¶ 12; Ex. 3 at 151:11–157:8.)  Third, Experian obtains public records, such as bankruptcy information, from its public records vendor.  (Methvin Decl. ¶ 12; Ex. 3 at 196:7–10.)  The public records vendor, however, only provides the type of bankruptcy a consumer filed as well as the major events in a consumer's bankruptcy proceedings (*e.g.*, filed, dismissed, discharged).  (Methvin Decl. ¶ 12; Ex. 3 at 196:11–197:17; Ex. 16 at 108:14–109:1.)  This vendor does not report or reinvestigate information regarding the specific accounts included or not included

EXPERIAN'S MOTION
FOR SUMMARY JUDGMENT
Case No. 2:16-cv-00183-RFB-PAL

in an individual consumer's bankruptcy because the vendor, like Experian, is not a party to the bankruptcy and thus not privy to account-level information.  (*Id.*)

### B.    Plaintiff's Chapter 13 Bankruptcy

Plaintiff filed for Chapter 13 Bankruptcy on April 9, 2009, identifying over $760,000 in outstanding debt.  (Ex. 19 at p. 8.)[3]  Nearly all of Plaintiff's debt consisted of money owed to various creditors related to mortgages on her home.  (*Id*. at p. 15.)  Following four defaults by Plaintiff on her Chapter 13 plan payments, Plaintiff's bankruptcy was discharged almost six years later on March 27, 2015.  (Exs. 6–9, Ex. 21.)

### C.    Plaintiff's Dispute Letter to Experian

On June 22, 2015, Experian sent Plaintiff a copy of her consumer disclosure.  (Ex. 10.)  This disclosure reflected an Ocwen Loan Servicing ("Ocwen") mortgage account with a balance of $938,186 as of June 2015 and a status of "open."  (*Id*. at p. EXP/CMainor00041.)  The payment history reported as 180-days past due from March 2013 to July 2014.  (*Id*.)  On July 29, 2015, Plaintiff mailed Experian a letter disputing Experian's reporting of the Ocwen account, along with several other accounts not at issue in this lawsuit.  (Ex. 11.)[4]

Notably, Plaintiff's dispute letter did not identify any factual inaccuracy regarding her Ocwen account.  Instead, Plaintiff only asserted that the account had been discharged in bankruptcy, and that, as a result, the balance should be reported as "$0" (instead of "$938,186"), the status should be reported as "current" (instead of "open"), and "[t]here should be no derogatory reporting after the filing date."  (*Id.* at EXP/CMainor00008.)  Plaintiff stated, "[s]pecifically, please remove the derogatory information for the following post-bankruptcy dates: Mar2013 – Jul2014 (180 days past due)."  (*Id.*)  Along with her dispute letter, Plaintiff included a copy of her June 22, 2015 Experian consumer disclosure, the first three pages of her bankruptcy petition, and her Nevada driver's license.  (*Id*. at EXP/CMainor00009–26.)  The first three pages of Plaintiff's bankruptcy

---

[3] Plaintiff originally filed for Chapter 13 bankruptcy in December 2007.  (*See* Ex. 4.)  In August 2008, the trustee moved to dismiss the petition for failure to make plan payments; in November 2008, the Court dismissed Plaintiff's petition on her own motion.  (Exs. 4–5.)

[4] At deposition, Plaintiff testified that her attorneys wrote her dispute letter, she reviewed and signed it, and her attorneys mailed it to Experian.  (Ex. 12 at 146:17–152:19; 172:12–173:3.)

EXPERIAN'S MOTION
FOR SUMMARY JUDGMENT
Case No. 2:16-cv-00183-RFB-PAL

1  petition did not include the schedule of accounts included in her bankruptcy and made no mention

2  of the disputed Ocwen account.  (*Id*. at EXP/CMainor00023–25; Ex. 1 at pp. 6–8.)

3  **D.    Experian's Reinvestigation of Plaintiff's Dispute**

4  Experian received Plaintiff's dispute letter on or about August 4, 2015, and promptly

5  initiated a reinvestigation in response.  (Methvin Decl. ¶ 14; Ex. 1 at p. 7.)  On August 10, 2015,

6  Experian contacted Ocwen by sending an ACDV regarding Plaintiff's dispute, including a complete

7  copy of Plaintiff's dispute letter and the attached documents.  (Methvin Decl. ¶ 14; Ex. 13.)

8  Experian included the industry dispute code "106" to communicate the nature of Plaintiff's dispute

9  to Ocwen: "Disputes present/previous Account Status, History.  Verify Accordingly."  (Ex. 13.)

10  Following Ocwen's investigation of Plaintiff's dispute, Ocwen responded to Experian on August

11  13, 2015.  (*Id*.)  Ocwen's response verified that the account was accurately reporting as an "open"

12  and "current" account with a previous "180-day delinquency" and no related bankruptcy.  (*Id*.; Ex.

13  1 at 8 n.4.)

14  On August 27, 2015, Experian mailed Plaintiff the results of its reinvestigation of her

15  dispute, which indicated that Ocwen had updated Experian's reporting of the account balance,

16  payment history, and date last paid for the account.  (Methvin Decl. ¶ 14; Ex. 14.)  The document

17  advised Plaintiff of additional options she could pursue if she was not satisfied with the results of

18  her dispute.  (*Id*. at EXP/CMainor00052–53.)  After receiving Experian's reinvestigation results,

19  Plaintiff took no further action, never contacting Experian again prior to filing this lawsuit.

20  (Methvin Decl. ¶ 15; Ex. 15 at 37:4–24.)

21  **E.    Plaintiff's Lawsuit**

22  Plaintiff's First Supplemental Complaint alleges that Experian violated Section 1681i(a) of

23  the FCRA by failing to conduct a reasonable reinvestigation of her dispute because, although

24  Experian updated the payment history of the Ocwen account, it continued to inaccurately report

25  past balances for the account.  (ECF No. 52 ¶¶ 38–48.)[5]  Plaintiff claims this violation was willful,

26  and seeks actual, statutory, and punitive damages, and attorneys' fees and costs.  (*Id*. ¶¶ 47, 77.)

27

28  [5] To the extent the First Supplemental Complaint alleges a violation of 15 U.S.C. § 1681c for "re-aging" the Ocwen account (*see* ECF No. 52 ¶ 36), this allegation is plainly against Ocwen alone.  Ocwen, of course, has been dismissed from this case.  (ECF No. 39.)  There is no material

EXPERIAN'S MOTION
FOR SUMMARY JUDGMENT
Case No. 2:16-cv-00183-RFB-PAL

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## LEGAL STANDARD

A motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A "material" fact is one that may "affect the outcome of the suit under governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine" issue exists where there is sufficient evidence that a reasonable jury could return a verdict for the nonmoving party. *See id.* at 248. Mere arguments or allegations are insufficient to defeat a properly supported motion for summary judgment; the nonmovant must present more than a scintilla of evidence and must advance specific facts to create a genuine issue of material fact for trial. *See* Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 248–51. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment should be entered in the movant's favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

## ARGUMENT

Plaintiff's only remaining claim fails as a matter of law.[6] To survive summary judgment on a 15 U.S.C. § 1681i(a) "reasonable reinvestigation" claim, Plaintiff must produce admissible evidence establishing: (1) that her credit file contained inaccurate information and she notified Experian directly of the inaccurate information; (2) that Experian failed to respond to or to conduct a reasonable reinvestigation of her dispute; and (3) that Experian's failure caused her harm. *See, e.g., Carvalho v. Equifax Info. Servs., Inc.*, 588 F. Supp. 2d 1089, 1095 (N.D. Cal. 2008), *aff'd*, 629 F.3d 876 (9th Cir. 2010); *Saenz v. Trans Union, LLC*, 621 F. Supp. 2d 1074, 1082 (D. Or. 2007). Plaintiff must also show either that she suffered actual damages caused by Experian's conduct, or that she is entitled to statutory damages because Experian acted willfully in violating the FCRA. *See, e.g., Saenz*, 621 F. Supp. 2d at 1082. Because Plaintiff is unable to put forth evidence

---

allegation against Experian nor facts uncovered in discovery that would support a claim against Experian on this basis.

[6] Following the Court's rulings at the August 16, 2018 motion hearing, Plaintiff's only remaining claim is that Experian violated Section 1681 by failing to conduct a reasonable reinvestigation of her June 2015 dispute letter as to her Ocwen mortgage account. (*See* ECF Nos. 114, 52 at ¶¶ 38–48.)

establishing each—or any—of these elements, summary judgment must be granted in favor of Experian.

## I.     PLAINTIFF CANNOT ESTABLISH AN INACCURACY

Plaintiff cannot establish that Experian reported inaccurate information about the disputed Ocwen account.  The existence of inaccurate information is a part of Plaintiff's *prima facie* case under Section 1681i(a).  *Carvalho*, 629 F.3d at 890–91 (holding that Section 1681i claims require the plaintiff to show an inaccuracy).  But here, Plaintiff does not even allege a factual inaccuracy. She does not claim that she paid off her mortgage account, that she was current with payments, or that she had never been 180-days delinquent.  Instead, she alleges that her mere filing for bankruptcy and payments pursuant to the Court-ordered Chapter 13 plan rendered "any post-bankruptcy derogatory reports" both "inaccurate and illegal."  (ECF No. 52 ¶ 21.)  And that following her bankruptcy discharge in March 2015, the balance on the Ocwen account should have been reported as $0, with a status of "current."  (*Id.* ¶ 35.)  These claims fail for three reasons: (1) there is no evidence that Plaintiff's Ocwen account was included, much less discharged, in her bankruptcy; and even if it had been, (2) Experian is not required to adjudicate the *legal* validity of the debt, and (3) it is not inaccurate for Experian to report the debt following bankruptcy.

First, Plaintiff's insistence that the Ocwen account was discharged in bankruptcy is unsupported by any evidence.  The only evidence Plaintiff provided with her dispute—the first three pages of her bankruptcy petition—did not include the schedule of accounts included in bankruptcy and made no mention of the disputed Ocwen account. (Ex. 11 at EXP/CMainor00023– 25.)  Plaintiff did not present any documentation indicating that the Ocwen account had been included in Plaintiff's bankruptcy, and nothing on the bankruptcy docket showed that the account had been discharged. (*See* Ex. 16 at 122:3–17; Ex. 19; Ex. 20; Ex. 21.)  Plaintiff's failure to identify any evidence that the Ocwen account was included and discharged in her bankruptcy alone bars her claim.  (*See* Ex. 1 at pp. 9–10.)

Second, even if the disputed Ocwen account had been included in Plaintiff's bankruptcy, Plaintiff's complaint relies on the *legal* status of an existing debt and Experian's reporting of the account would be inaccurate only by virtue of the operation of complex principles of bankruptcy

law.  Yet it is well established that the FCRA does not require Experian to act as a tribunal and adjudicate legal disputes about the status of debts.  *See, e.g.*, *Carvalho*, 629 F.3d at 892 ("[R]einvestigation claims are not the proper vehicle for collaterally attacking the legal validity of consumer debts."); *DeAndrade v. Trans Union LLC*, 523 F.3d 61, 68 (1st Cir. 2008) (holding that determining the validity of a mortgage loan "is not a factual inaccuracy that could have been uncovered by a reasonable reinvestigation, but rather a legal issue that a credit agency . . . is neither qualified nor obligated to resolve under the FCRA"); *Hupfauer v. Citibank, N.A.*, No. 1:16-cv-00475, 2016 WL 4506798, at *7 (N.D. Ill. 2016) (dismissing claims following a Chapter 13 discharge in part because "requiring a third party such as a credit bureau to determine whether a specific account was discharged in a particular consumer's Chapter 13 bankruptcy would impose an unfairly heavy burden on that party . . . . This is precisely the kind of legal question that credit reporting agencies are neither qualified nor obligated to answer.").

Third, it is simply not inaccurate for Experian to report Plaintiff's debt and delinquency following discharge in bankruptcy.  "[R]eporting agencies are entitled to report debts for seven years after discharge, as entitled by the plain language of 15 U.S.C. [§] 1681c.*" Riekki v. Bayview Fin. Loan Servicing*, No. 2:15-cv-2427-JCM-GWF, 2016 WL 4083216, at *2 (D. Nev. July 28, 2016); *see also Abeyta v. Bank of Am.*, No. 2:15-cv-02320-RCJ-NJK, 2016 WL 1298109, at *2 (D. Nev. Mar. 31, 2016) ("[T]he Bankruptcy Code prevents certain collection activities, but it does not alter the fact of a delinquency.").

Finally, Plaintiff also incorrectly claims that Experian's alleged failure to comply with the Metro 2® Format published by the Consumer Data Industry Association ("CDIA") somehow rendered its reporting inaccurate or misleading.  (*See* ECF No. 52 ¶¶ 26–28.)  But the Metro 2® Format applies to furnishers, not CRAs, so Experian could not have "failed" to apply the guidelines. (*See* Methvin Decl. ¶ 13.)  And this Court recently held that industry guidelines such as Metro 2® Format, which standardizes the computer layout for credit reporting to ensure the integrity of the data, "do not establish the standards for accuracy under the FCRA," and thus a plaintiff "cannot claim a violation of the FCRA premised upon a deviation of the Metro 2 guidelines." *Uehara v. TD Bank, Nat'l Ass'n*, 2:17-cv-00190-GMN-CWH, 2018 WL 1472712, at *5 (D. Nev. Mar. 26,

2018) (quoting *Florence v. Cenlar Fed. Sav. & Loan*, No. 2:16-cv-0587-GMN-NJK, 2018 WL 1145804, at *7 (D. Nev. Mar. 1, 2018)). "[D]istrict courts within the Ninth Circuit overwhelmingly have held that a [furnisher's] violation of industry standards is insufficient, without more, to state a claim for violation of the FCRA" by a CRA. *Smith v. Experian Info. Sols., Inc.*, No. 16-cv-04653-BLF, 2017 WL 1092377, at *5 (N.D. Cal. Mar. 23, 2017); *see also Doster v. Experian Info. Sols., Inc.*, No. 16-cv-04629-LHK, 2017 WL 264401, at *5 (N.D. Cal. Jan. 20, 2017) (collecting cases); *Mortimer v. Bank of Am., N.A.*, No. 12-cv-01959, 2013 WL 1501452, at *12 (N.D. Cal. Apr. 10, 2013) ("Defendant's alleged noncompliance with the Metro 2 Format is an insufficient basis to state a claim under the FCRA.").

For all these reasons, Plaintiff is unable to establish the essential element of an inaccuracy, which should be the end of the inquiry, and summary judgment should be entered for Experian.

## II.     EXPERIAN'S REINVESTIGATION WAS REASONABLE

Plaintiff similarly cannot establish that Experian failed to conduct a reasonable reinvestigation of her dispute. The FCRA is not a strict liability statute. *See Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995); (Ex. 16 at 123:18–124:5 ("[N]obody is infallible. That's the whole point of consumer reporting and the FCRA not being a strict liability statute. Everybody makes mistakes . . . that's just part of the system.").) Once a consumer notifies a CRA of a purported inaccuracy, then the CRA is only obligated to conduct a reasonable reinvestigation of the disputed information. *See* 15 U.S.C. § 1681i(a)(1).

When a consumer submits a dispute to a CRA, the CRA satisfies its reinvestigation obligations by contacting the creditor reporting the account, informing it of the consumer's dispute, including relevant information provided by the consumer, and requesting that the creditor verify the information. *See Boothe v. TRW Credit Data*, 768 F. Supp. 434, 438 (S.D.N.Y. 1991). Indeed, the Ninth Circuit has recognized that a "CRA's 'reasonable reinvestigation' consists largely of triggering the investigation by the furnisher" because the furnisher "stands in a far better position to make a thorough investigation of a disputed debt than the CRA does on reinvestigation." *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156 (9th Cir. 2009); *Carvalho*, 629 F.3d

at 892 ("[T]he creditor or furnisher . . . 'stands in a far better position to make a thorough investigation of a disputed debt than the CRA does on reinvestigation.'").[7]

Here, Experian conducted a reasonable reinvestigation by forwarding Plaintiff's dispute to the furnisher, Ocwen, and relying on Ocwen's response.  Not only was Ocwen in a "far better position" to assess the veracity of Plaintiff's dispute, but it was the only one who could confirm the status of Plaintiff's account.  While Experian contracts with a vendor to report public record items such as bankruptcies, that vendor merely verifies the status of the public records themselves, not specific trade lines that may or may not be subject to a bankruptcy.  (Methvin Decl. ¶ 12; Ex. 3 at 196:7–197:17; Ex. 16 at 108:14–109:1.)  Moreover, as noted above, Plaintiff did not present any documentation indicating that the Ocwen account had been included in Plaintiff's bankruptcy, and nothing on the bankruptcy docket showed that the account had been discharged.  (*See* Ex. 16 at 122:3–17; Ex. 1 at pp. 9–10, Exs. 19–20.)  Thus, the only reasonable method of reinvestigating Plaintiff's dispute was for Experian to request that Ocwen verify the status of the account through an ACDV.

Indeed, courts have repeatedly recognized that CRAs are justified in relying on information received from data furnishers in conducting reinvestigations.  *See, e.g.*, *Quinn v. Experian Sols.*, No. 02-cv-5908, 2004 WL 609357, at *6 (N.D. Ill. Mar. 24, 2004); *Anderson v. Trans Union LLC*, 367 F. Supp. 2d 1225, 1233 (W.D. Wis. May 3, 2005). And "many courts have held [that] the practice of using ACDVs in the reinvestigation process is reasonable as a matter in law." *Garrett v. Experian Info. Sols., Inc.,* No. 11-cv-12523, 2012 WL 1931324, at *6 (E.D. Mich. May 29, 2012) (collecting cases).  This is particularly true where, as here, the plaintiff failed to provide evidence to support her contention that the information reported by the creditor was unreliable.[8] *Anthony v. Experian Info. Sols., Inc.*, No. 2:14-cv-01230, 2017 WL 1198499, at *7 (E.D. Cal. Mar. 31, 2017) (holding as a matter of law that Experian's exclusive reliance on the ACDV process was reasonable

---

[7] Plaintiff's own expert witness agrees.  Plaintiff's expert witness admits that data furnishers, not CRAs, are typically in the best position to know whether their accounts with a consumer were discharged in bankruptcy.  (Ex. 16 at 106:23–109:1.)

[8] Plaintiff attached the first three pages of her bankruptcy petition to her dispute letter, but they did not include the schedule of accounts and made no mention of the Ocwen mortgage account. (*See supra* at p. 6.)

1    when plaintiff failed to provide evidence that the information provided by the data furnisher was

2    suspect); *see also Edeh v. Equifax Info. Servs., LLC*, 974 F. Supp. 2d 1220, 1236–37 (D. Minn.

3    2013), *aff'd*, 564 F. App'x 878 (8th Cir. 2014) (granting summary judgment and concluding that

4    the CRA's exclusive reliance on an ACDV was reasonable as a matter of law when plaintiff

5    submitted no documentation to support the dispute); *Childress v. Experian Info. Sols., Inc.*, 790

6    F.3d 745, 747 (7th Cir. 2015) (same); *Ghazaryan v. Experian Info. Sols., Inc.*, No. 2:15-cv-9604-

7    RGK-MRW, 2017 WL 5957640, at *4–*5 (C.D. Cal. Jan. 4, 2017) (same).

8            Because "only one conclusion" can be reached regarding the reasonableness of Experian's

9    conduct, summary judgment is "appropriate" here. *Ghazaryan*, 2017 WL 5957640, at *4 (quoting

10   *Gorman*, 584 F.3d at 1157).  There is no dispute that Experian sent an ACDV request that "was

11   reasonably calculated to enable [Ocwen] to investigate [Plaintiff's] dispute," and it "had no

12   indication that the ACDV process would not suffice." *Id.* at *4; *see also Anthony*, 2017 WL

13   1198499, at *6 ("[A] consumer's dispute of inaccurate information alone [*i.e.*, without providing

14   supporting evidence] cannot call into question a furnisher's credibility because consumers have an

15   incentive to be deceitful about their credit information.").  Indeed, Experian provided Ocwen—the

16   company that held Plaintiff's account, did business directly with her as to that account, and would

17   have been involved in any bankruptcy proceedings concerning that account—with a specific, coded

18   description of Plaintiff's dispute, Plaintiff's dispute letter, and all documentation Plaintiff included;

19   required Ocwen to certify that the disputed account was not included in or discharged in bankruptcy;

20   evaluated Ocwen's response in accordance with its own procedures; and updated its reporting of

21   the account accordingly.  And, even if Experian had attempted to pull and evaluate records from

22   Plaintiff's bankruptcy docket, nothing on that docket indicated that the Ocwen account had been

23   included or discharged in the bankruptcy.  (*See* Ex. 16 at 122:3–17; Ex. 1 at pp. 9–10, Exs. 19–21.)

24   Thus, absent contacting Ocwen, Experian's only way of determining the status of the account would

25   have been to evaluate the legal status of the account in Plaintiff's bankruptcy, which the FCRA

26   does not require it to do.  *See Carvalho*, 629 F.3d at 892 ("A CRA is not required as part of its

27   reinvestigation duties to provide a legal opinion on the merits.").  Accordingly, Experian is entitled

28   to summary judgment on Plaintiff's Section 1681i claim.

EXPERIAN'S MOTION
FOR SUMMARY JUDGMENT
Case No. 2:16-cv-00183-RFB-PAL

1

### III.    PLAINTIFF SUFFERED NO COGNIZABLE DAMAGES

2
3
4
5
6
7
8
9
10
11

Plaintiff sustained no actual damages as a result of Experian's alleged failure to comply with Section 1681.  *See* 15 U.S.C. § 1681o; *Crabill v. Trans Union, LLC*, 259 F.3d 662, 664 (7th Cir. 2001) ("Without a causal relation between the violation of the statute and the loss of credit, or some other harm, a plaintiff cannot obtain an award of 'actual damages.'"); *Nagle v. Experian Info. Solutions, Inc.*, 297 F.3d 1305, 1307 (11th Cir. 2002) ("[F]ailure to produce evidence of damage resulting from a[n] FCRA violation mandates summary judgment.").  Plaintiff's First Supplemental Complaint broadly alleges four categories of actual damages: (1) credit denials; (2) damage to her creditworthiness; (3) out-of-pocket expenses; and (4) emotional distress.  (ECF No. 52 ¶ 48.)  Because Plaintiff cannot prove any of these alleged damages, her negligence claim cannot survive summary judgment.

12
13
14
15
16
17
18
19
20
21
22
23
24

Plaintiff has produced no evidence that any credit denials or any other adverse credit decisions are directly attributable to any Experian credit report, much less attributable to Experian's allegedly inaccurate reporting of her Ocwen mortgage.  (Ex. 12 at 115:7–128:12.)  Rather, all third-party requests for Plaintiff's Experian credit report occurred *before* her bankruptcy discharge in March 2015.  (Exs. 10, 14; Ex. 12 at 220:14–222:1.)  Moreover, Plaintiff admitted that she knew that filing for bankruptcy would negatively affect her credit, and that her bankruptcy has caused credit denials and prevented her from getting credit at favorable interest rates.  (Ex. 12 at 69:11–16, 74:15–75:22, 237:18–239:13.).  As such, Plaintiff cannot demonstrate that any credit denials were attributable to Experian's reporting of the Ocwen account, as opposed to any of the other negative items on Plaintiff's credit file (including the bankruptcy itself).  *See Pendleton v. Trans Union Sys. Corp.*, 76 F.R.D. 192, 195 (E.D. Pa. 1977) ("[A] consumer who was denied credit must show that the denial was caused by inaccurate entries (which in turn were caused by the defendant's failure to use reasonable procedures), rather than by correct adverse entries or any other factors.").

25
26
27
28

Unsurprisingly, Plaintiff also could not explain at her deposition what she claimed to be damage to her "creditworthiness."  (Ex. 12 at 197:14–20.)  As a matter of law, these claimed damages are too speculative to support recovery.  *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 475 (2d Cir. 1995); *see also McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 808 (9th Cir. 1988)

1   (damages cannot be "left to speculation or guesswork"); *Lee v. Sec. Check, LLC*, No. 3:09-cv-421-
2   J-12TEM, 2010 WL 3075673, at *13 (M.D. Fla., Aug. 5, 2010).

3       Similarly, Plaintiff cannot show a genuine dispute of material fact as to whether Experian's
4   conduct caused her emotional harm.  While the FCRA does permit recovery for emotional distress,
5   *Guimond*, 45 F.3d at 1333, courts closely review emotional distress claims because they "are so
6   easy to manufacture."  *Sarver v. Experian Info. Sols.*, 390 F.3d 969, 971 (7th Cir. 2004) (quoting
7   *Aiello v. Providian Fin. Corp.*, 239 F.3d 876, 880 (7th Cir. 2001)).  Accordingly, to survive
8   summary judgment, Plaintiff "must support a claim for damages based on emotional distress with
9   something more than his or her own conclusory allegations."  *Myers v. Bennett Law Offices*, 238 F.
10  Supp. 2d 1196, 1206 (D. Nev. 2002); s*ee also Burnthorne-Martinez v. Sephora USA, Inc*., No. 16-
11  cv-02843-YGR, 2016 WL 6892721, at *6 (N.D. Cal. Nov. 23, 2016) (finding "general and
12  conclusory" allegations of emotional distress insufficient to state a claim for violation of the FCRA,
13  reasoning that something more than a statement that plaintiff "suffered great worry and concern"
14  is required).  That "something more" requires "a degree of specificity which may include
15  corroborating testimony or medical or psychological evidence in support of the damage award."
16  *Myers*, 238 F. Supp. 2d at 1206 (quoting *Cousin v. Trans Union Corp.*, 246 F.3d 359, 371 (5th Cir.
17  2001)).  At a minimum, Plaintiff must be able to explain the circumstances of her emotional distress
18  "in reasonable detail."  *Ruffin-Thompkins v. Experian Info. Sols., Inc.*, 422 F.3d 603, 609 (7th Cir.
19  2005) (quoting *Sarver*, 390 F.3d at 971); *see also Taylor v. Tenant Tracker*, Inc., 710 F.3d 824, 829
20  (8th Cir. 2013) (dismissing claim where plaintiff "offered no reasonable detail about the nature and
21  extent of her alleged emotional distress" and no corroborating evidence).

22      The evidence produced in this case falls woefully short of meeting this standard.  Not only
23  has Plaintiff failed to offer medical testimony to corroborate her claims,[9] she utterly failed to
24  provide any detail to support her own unsupported and conclusory assertions.  Indeed, during her
25  deposition, Plaintiff was unable to provide any detail regarding any emotional distress Experian
26

27  _____
28      [9] "[I]n certain cases, expert medical testimony is required in order to prove causation, and
    that failure to present such evidence can justify dismissal of an action."  *Layton v. Yankee Caithness
    Joint Venture, L.P.*, 774 F. Supp. 576, 580 (D. Nev. 1991).

caused due to its purported inaccurate reporting of the Ocwen account.  (*See* Ex. 12 at 194:7–214:12.)  Although Plaintiff generally claimed that she has experienced anxiety and lack of sleep, she admitted that she has not been diagnosed with any anxiety or sleep issue by a medical professional and is not taking medication for such issues.[10]  (*Id.* at 202:8–214:12.)  Without "something more," that is not sufficient to show emotional distress damages.

Even if the Court accepts that Plaintiff's purported damages were not manufactured for the purpose of supporting Plaintiff's claims, Plaintiff must affirmatively establish that any emotional distress damages were properly attributable to Experian, rather than to any other cause, such as to the creditor who provided the alleged inaccurate information to Experian in the first place.  *See Casella*, 56 F.3d at 474 ("[Plaintiff] was not entitled to pain and suffering damages in this case, because he had failed to show that his emotional distress was caused by [the CRA], as opposed to [the creditor].").  Here, any emotional distress experienced by Plaintiff cannot reasonably be attributed to Plaintiff's single dispute letter and her relatively minor quibbles with Experian's reporting of one account.  Plaintiff also conceded at her deposition that her financial stress and anxiety over her mortgage began when she filed for bankruptcy in 2009—over six years before her dispute with Experian's reporting of the Ocwen mortgage account—and stemmed from her dealings with Ocwen, not Experian.  (Ex. 12 at 46:22–49:22.)  No reasonable fact finder could conclude that Plaintiff's emotional distress was caused by Experian's conduct.

Finally, Plaintiff attempts to claim out-of-pocket expenses stemming from Experian's reporting of the Ocwen account.  But she was unable to identify any such expenses beyond generalizations at her deposition and could not give any estimate for the amount she claimed.  (Ex. 12 at 196:21–197:12.)  Plaintiff has produced no documents that support any of these claimed expenses, and she fails to connect these purported costs to Experian's allegedly inaccurate reporting of the Ocwen account.  Out-of-pocket pre-litigation costs are not a cognizable item of actual

---

[10] Plaintiff testified in 2016 that she had seen a medical professional for stress and anxiety but provided no specifics or supporting evidence, and claimed that she has been prescribed medication for stress and anxiety but does not take it.  (Ex. 12 at 202:8–214:12.)  Plaintiff has not seen a medical professional or psychiatrist regarding her claimed anxiety since November 2016.  (Ex. 15 at 69:22–70:4.)

damage under the FCRA. *See Campbell v. Experian Info. Sols., Inc.*, No. 08-cv-4217-NKL, 2009 WL 3834125, at *7 (W.D. Mo. Nov. 13, 2009) (holding "miscellaneous out-of-pocket expenses for postage fees, credit monitoring, printing and copying costs, and mileage expended in disputing the errors in [the] credit report," as well as "time spent reviewing credit reports, researching those reports, making phone calls, lodging disputes, and sending letters and faxes" are not recoverable); *see also Reed v. Experian Info. Sols., Inc.*, 321 F. Supp. 2d 1109, 1115 (D. Minn. 2004) ("Pre-litigation attorneys' fees are not the sort of harm contemplated by the statute."); *Eller v. Experian Info. Sols., Inc.*, No. 09-cv-00040-WJM-KMT, 2011 WL 3365955, at *12 (D. Colo. May 17, 2011). In addition, any out-of-pocket costs associated with litigation similarly fail to qualify as items of actual damage where, as here, a plaintiff's claim has no merit. *See Reed*, 321 F. Supp. 2d at 1114–15 (finding that plaintiff's "FCRA claims fail[ed] for want of evidence of either harm or willful noncompliance" and rejecting his claim for damages based on "costs expended enforcing the Act," reasoning that "[b]ecause plaintiff has failed to show a violation, the fees were not expended to enforce the FCRA"). Accordingly, Plaintiff cannot establish any damages caused by Experian's allegedly inaccurate reporting of the Ocwen account, and thus her claim for actual damages fails.

## IV.   EXPERIAN DID NOT WILLFULLY VIOLATE THE FCRA

Plaintiff has put forth no evidence establishing intentional or reckless conduct by Experian warranting a claim for willful violation of the FCRA. *See* 15 U.S.C. § 1681n. Willful misconduct under the FCRA encompasses both intentional and reckless violations of the law. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 59 (2007). Thus, for a willful violation to have occurred, Plaintiff must prove that Experian intentionally harmed her, or that Experian's procedures were so objectively unreasonable that they were in reckless disregard of its statutory obligations. *Id.* at 59, 69–70. Where a CRA's actions have "a foundation in the statutory text . . . and a sufficiently convincing justification," they are not objectively unreasonable, let alone reckless, even if the court disagrees with the justification. *Id.* at 69–70. Thus, a CRA violates the FCRA willfully only where its acts are established as unlawful by either "pellucid" statutory text or "guidance from the courts of appeal or the [FTC] . . . that might have warned it away from the view it took." *Id.* at 70. The absence of willfulness can be resolved as a matter of law. *See id.* at 71 (holding, as a matter of law,

that the defendant did not recklessly violate the FCRA); *see also Abernathy v. Cont'l Serv. Grp., Inc.*, No. 2:17-cv-00636-APG-NJK, 2018 WL 3370524, at *4–*5 (D. Nev. July 9, 2018) (granting Experian's motion for summary judgment on claim for willful violation of Section 1681 where Experian reinvestigated plaintiff's dispute by sending an ACDV to the furnisher of the disputed information along with all information provided by plaintiff, and was not provided any documentation that would put it on notice that the furnisher's information might have been suspect).

Here, Plaintiff has no evidence that Experian acted either intentionally or recklessly when it conducted the single reinvestigation that she requested.  Although Plaintiff has alleged that Experian acted willfully, she has produced no evidence in support of this claim.  Plaintiff testified that Experian's actions were willful simply because it contacted Ocwen to reinvestigate her dispute and, based on Ocwen's response, did not change its reporting of the Ocwen account to her satisfaction.  (Ex. 12 at 227:15–19; Ex. 15 at 70:12–22.)  This is nowhere near the showing required to establish that Experian's violation was willful.  *See Zahran v. Transunion Corp.*, No. 01-cv-01700, 2003 WL 1733561, at *7 (N.D. Ill. Mar. 31, 2003) ("The mere existence of inaccuracies . . . does not itself amount to an act in conscious disregard of [plaintiff's] rights supporting a finding of willful noncompliance.").  There is no evidence that Experian failed to do anything required under the FCRA in reinvestigating Plaintiff's dispute, much less that it did so in the face of an "unjustifiably high risk of harm" to the Plaintiff.  *Safeco*, 551 U.S. at 68–69.

## CONCLUSION

For the reasons stated in its Memorandum of Points and Authorities, Experian respectfully requests that this Court grant its Motion for Summary Judgment.

DATED this 11th day of February 2019

NAYLOR & BRASTER

By: */s/ Jennifer L. Braster*
Jennifer L. Braster (Nevada Bar No. 9982)
1050 Indigo Drive, Suite 200
Las Vegas, NV  89145
(T) (702) 420-7000
(F) (702) 420-7001
jbraster@naylorandbrasterlaw.com
*Attorneys for Defendant Experian Information Solutions, Inc.*

1

**<u>CERTIFICATE OF SERVICE</u>**

2

3        Pursuant to Federal Rule of Civil Procedure 5(b), I hereby certify that I am an employee of

4    NAYLOR & BRASTER and that on this 11th day of February 2019, I caused the document

5    **DEFENDANT EXPERIAN INFORMATION SOLUTIONS, INC.'S MOTION FOR**

6    **SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN**

7    **SUPPORT THEREOF** to be served through the Court's CM/ECF system addressed to:

David H. Krieger
8    Haines & Krieger, LLC
8985 S. Eastern Avenue, Suite 350
9    Henderson, NV  89123
Email: dkrieger@hainesandkrieger.com

10
Allison R. Schmidt
11   Allison R Schmidt, Esq., LLC
8465 W. Sahara Ave., Suite 111-504
12   Las Vegas, NV 89117
Email: allisonschmidtesq@gmail.com

13
Matthew I. Knepper
14   Miles N. Clark
Knepper & Clark, LLC
15   10040 W. Cheyenne Ave. Suite 170-109
Las Vegas, NV 89129
16   Email: matthew.knepper@knepperclark.com
Email: miles.clark@knepperclark.com

17
*Attorneys for Plaintiff*
18

19                                              /s/ Jennifer L. Braster
                                                _____
20                                              An Employee of NAYLOR & BRASTER

21

22

23

24

25

26

27

28

EXPERIAN'S MOTION
FOR SUMMARY JUDGMENT
Case No. 2:16-cv-00183-RFB-PAL